UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **JULI H. ALLISON** | : | **DOCKET NO. 2:19-cv-1240** |
| **VERSUS** | : | **JUDGE TERRY A. DOUGHTY** |
| **BOYD RACING, LLC** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a second Motion to Dismiss filed by defendant Boyd Racing, LLC d/b/a Delta Downs Racetrack Hotel & Casino (hereinafter "Delta Downs"). Doc. 13. Plaintiff Juli H. Allison opposes the motion. Doc. 15. The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

For the reasons stated below, **IT IS RECOMMENDED** that the defendant's Motion to Dismiss be **GRANTED** in part and **DENIED** in part.

## I.
### BACKGROUND

On September 23, 2019, plaintiff filed suit in this court against her former employer, Delta Downs, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) *et seq.,* and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* Doc. 1. Plaintiff alleges that she worked for Delta Downs from February 12, 2015, until she was terminated December 3, 2018. *Id.*, p. 3. She claims that throughout the course of her employment the Director of Racing, Christopher Warren ("Warren"), would place his hands on her shoulders when he spoke with her, comment on her clothing, question her about her dating life,

and contacted others to inquire as to whom she was dating. *Id*., p. 3. She also claims that on occasion Warren contacted her "late in the evening[]" and when asked why he called, would state "oh, I guess my butt must have wanted to talk to you." *Id.,* p. 3, ¶ 12. She alleges that in August of 2018 she reported Warren's behavior to her immediate supervisor, Director of Finance Steve Meier ("Meier"). *Id.,* pp. 3-4, ¶ 14. Plaintiff also alleges that in October of 2018 another employee, Steve Kypers ("Kypers"), refused to permanently hire her mother to work in the Silks room washing and handing out the jockey uniforms [*Id.,* p. 4] due to her age. *Id*., p. 5. During a phone call, Warren told plaintiff that Kypers would not allow him to hire the plaintiff's mother because she was "too old." *Id*. Plaintiff subsequently sent the following text message to Warren:

> Why can't you just be upfront and tell the truth you know u could have hired her if you wanted but don't make the mistake of thinking we r friends I should have taken you to HR when you inappropriately called Brett's secretary to ask who he was dating so just drop it Chris and don't ask me to ever help you out with anything again.

Doc. 1, att. 3, as quoted at Doc. 1, p. 5. Plaintiff subsequently met with Kypers, showed him the message she sent Warren, and "explained her concerns about Warren, including the inappropriate questions about her personal life" and "also asked Kypers why he refused to hire her mother for being 'too old.'" Doc. 1, p. 5, ¶ 23. Kypers responded that it would be best to "let things lie." *Id*. Kypers also adamantly denied saying he would not hire the plaintiff's mother because she was "too old." *Id*. Several days after her meeting with Kypers, plaintiff was called to the Human Resources office and Cheryl Sandoval ("Sandoval") informed plaintiff that she was being suspended. *Id.*, p. 6, ¶ 24. Upon plaintiff asking for a reason for the suspension, Sandoval replied, "I'm investigating you, and I'm not at liberty to say." *Id*. At that time plaintiff showed Sandoval the text she sent Warren and informed Sandoval of her "concerns about Warren's inappropriate workplace behavior and concern that her mother was denied employment because she was 'too

old.'" *Id.*, ¶ 25. Thereafter, plaintiff was formally suspended and ultimately terminated December 3, 2018. *Id.*, p. 6-7, ¶ 25-29.

Plaintiff filed a charge of discrimination with the Louisiana Commission on Human Rights ("LCHR") against Delta Downs complaining of Warren's behavior and Kypers' alleged refusal to hire her mother because of her mother's age. Doc. 1, att. 1. Plaintiff concluded that she was "retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.* The EEOC subsequently issued a Dismissal and Notice of Suit Rights. *Id.*, att. 2. Based upon its investigation, the EEOC determined that it was "unable to conclude that the information obtained establishes violations of the statutes." *Id.*, att. 2.

In her original complaint filed in this Court, plaintiff brought claims of sexual harassment, Title VII retaliation, and ADEA retaliation. Doc. 1. Defendant filed a Motion to Dismiss all of plaintiff's claims. Doc. 5. That motion which was referred to us [Doc. 7] and we recommended dismissal of the plaintiff's sexual harassment claim with prejudice. Doc. 10, pp. 8-9. As to plaintiff's retaliation claims, we found that plaintiff's complaint did not sufficiently allege facts indicating that she was engaged in a statutorily protected activity under Title VII and ADEA. *Id.*, pp. 10-11. Specifically, we found that her informal complaints to her supervisors and Sandoval would not "alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Id.*, p. 10. We recommended the Court grant the plaintiff leave to amend her complaint to cure the deficiencies. *Id.*, p. 11.

Plaintiff did not object to the Report and Recommendation. Instead plaintiff filed a First Amending and Supplemental Complaint wherein she provided additional facts with respect to her retaliation claim but did not re-urge her sexual harassment claim. Doc. 11. Following plaintiff's

amendment, the District Court then denied as moot the defendant's first Motion to Dismiss. Doc. 12.

Defendant has now moved to dismiss plaintiff's remaining claims for ADEA and Title VII retaliation. Doc. 13. Defendant suggests the retaliation claims should be dismissed as plaintiff failed to exhaust her administrative remedies. Doc. 13, att. 1, pp. 13-16. Defendant further argues that plaintiff fails to articulate a Title VII- or ADEA-protected activity therefore she fails to state retaliation claims. *Id.*, pp. 16-25. The defendant urges that the plaintiff's alleged conversations with supervisory and management officials, even as described in her amended complaint, still do not constitute protected activity since the Fifth Circuit has held that vague complaints without reference to a specific discriminatory policy are insufficient. *Id.*, pp. 19-20. Defendant argues that plaintiff has merely rephrased the same factual allegations and only makes "wholly self-serving and conclusory statements" which fail to state a claim under the *Iqbal* standard. *Id.*, p, 18.

Plaintiff opposes the motion, arguing she has exhausted her administrative remedies and stated plausible claims for relief. Doc. 15. She argues that her complaints to supervisors about Warren's behavior, as set forth in her amended complaint, sufficiently establish her "opposition" as a protected activity under Title VII. *Id.*, pp. 17-19. She also contends that specifically raising her concerns to three supervisory individuals about failure to hire her mother for being "too old" constituted protected activity under the ADEA. *Id.*, p. 23. Alternatively, plaintiff requests leave to amend her complaint a second time. *Id.*, pp. 23-24.

## II.
### LAW AND ANALYSIS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus exclusively on the complaint and its attachments. *Wilson v.*

*Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court also reviews such motions "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). While factual assertions are presumed to be true, "labels and conclusions" and "formulaic recitation of the elements of a cause of action" are not enough to withstand a 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court's task in evaluating a motion to dismiss under Rule 12(b)(6) is "not to evaluate the plaintiff's likelihood of success," but instead to determine whether the claim is both legally cognizable and plausible. *Billups v. Credit Bureau of Greater Shreveport*, 2014 WL 4700254 at *2 (W.D. La. Sep. 22, 2014) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

In order to maintain a civil suit against an employer for discriminatory employment practices, an employee must first exhaust her administrative remedies before the EEOC. *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). "Only after administrative efforts terminate may the employee sue the employer in federal court." *Id.* To determine whether the complaint's allegations were properly exhausted, courts engage in a "fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Pacheco*, 448 F.3d at 789. Therein, courts examine each claim set forth in the complaint to determine whether the allegations in the complaint are "like or related to allegation[s] contained in the [EEOC] charge." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970)). "[T]he crucial element of a charge of discrimination is the factual statement [particulars section]

contained therein." *Ellzey v. Cath. Charities Archdiocese of New Orleans*, 833 F. Supp. 2d 595, 601 (E.D. La. 2011) (quoting *Sanchez*, 431 F.2d at 462). Moreover, "'the provisions of Title VII were not designed for the sophisticated,' and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally." *Pacheco*, 448 F.3d at 788 (quoting *Sanchez*, 431 F.2d at 463)). The charging party's right to relief should not be cut off "merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations." *Vicknair v. La. Dep't of Pub. Safety & Corr.*, 555 F. App'x 325, 332 (5th Cir. 2014). The inquiry is instead whether the charge states facts sufficient to trigger an EEOC investigation and to "put an employer on notice of the existence and nature of the charges." *Id.* at 332. However, civil complaints are limited "by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 451 (5th Cir. 1983)).

Both Title VII and the ADEA prohibit employers from retaliating against employees for engaging in statutorily protected activities. *See* 29 U.S.C. § 623(d); 42 U.S.C. § 2000e–3(a). To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in a protected activity pursuant to one of the statutes; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *See Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016) (Title VII); *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001) (ADEA). "Activities protected under Title VII fall into two broad categories—opposition and participation." *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998). Opposition occurred if employee opposed any practice deemed an unlawful employment practice by Title VII [or the ADEA]. *Id.* Participation occurred if an employee "made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing" under these titles. *Id*. at 372-73 (citing 42 U.S.C. § 2000e–3(a); *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996)). "To satisfy the 'opposition clause,' [plaintiff] need not prove that [defendant's] practices were actually unlawful, but only that [she] had 'a reasonabl[e] belief that the employer was engaged in unlawful employment practices.'" *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (quoting *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir.1981)). In opposing unlawful practices, "[m]agic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown v. UPS*, 406 F. App'x 837, 840 (5th Cir. 2010) (citations omitted). Moreover, "[c]omplaining about unfair treatment without specifying why the treatment is unfair ... is not a protected activity." *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir.2008); *Davis v. Dallas Indep. School Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) ("[The Fifth Circuit has] consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity."); *accord Paske v. Fitzgerald*, 785 F.3d 977, 986 (5th Cir. 2015).

A. *Title VII Retaliation Claim*

Here, since the plaintiff did not engage in any formal "participation," only the "opposition" clause is at issue. Since making informal complaints to supervisors may constitute protected activity[1], defendants maintain that not the form, but the substance of plaintiff's complaints to her supervisors was deficient. In her amended complaint, plaintiff alleges that she reasonably believed

---

[1] In an unpublished opinion, the Fifth Circuit has held that an informal complaint to an employer or supervisor can meet the opposition requirement. *Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 914-15 (5th Cir. 2008); *accord Ford v. Amethyst Constr., Inc.*, No. 14-2617, 2016 WL 1312627 at *9 (W.D. La. Apr. 4, 2016); *Williams v. Racetrac Petroleum, Inc.*, 824 F. Supp. 2d 723, 726 (M.D. La. 2010).

Warren's conduct, including: (1) commenting on her clothing and placing his hands on her shoulders when they were speaking; (2) calling her cell phone in the late evening after work hours; and (3) consistently asking whom the plaintiff was dating, constituted sexual harassment in violation of Title VII. Doc. 11 pp. 3-4, ¶ 10-13, p. 8, ¶ 36. In terms of "opposing" what she believed to be an unlawful practice, plaintiff alleges as follows: (1) she reported the "entirely offensive and inappropriate behavior to her immediate supervisor and Director of Finance, Steve Meier;"[2] (2) in a text message she sent to Warren, she stated, in part, "…I should have taken you to HR when you inappropriately called Brett's secretary to ask who he was dating;"[3] (3) plaintiff showed Kypers, the General Manager, the text she sent to Warren, and thereafter "explained her concerns about Warren, including the inappropriate questions about her personal life;"[4] and (4) informed Human Resources officer Cheryl Sandoval about the text she sent to Warren "wherein she stated to him that she should have taken him to Human Resources for what she perceived to be sexually harassive conduct," and also went on to reiterate her concerns about Warren's "inappropriate workplace behavior" during her meeting with Sandoval.[5]

Notwithstanding plaintiff's perception of the events, we find that the concerns she raised to her superiors, as described in her amended complaint, did not advise her employer of her belief that unlawful sexual harassment was afoot. While she complained to four persons within the company, none of the foregoing conversations made a specific complaint about sexual harassment, but only vague complaints about "inappropriate" and "offensive" behavior. Vague complaints without a reference to an illegal employment practice are not protected under the "opposition" clause of Title VII. *See Davis*, 448 F. App'x at 493; *Harris-Childs v. Medco Health Solutions, Inc.*,

---

[2] Doc. 11, p. 4, ¶ 14.
[3] *Id.*, p. 5, ¶ 22.
[4] *Id.*, p. 6, ¶ 23.
[5] *Id.*, p. 6, ¶ 25.

169 F. App'x 913, 916 (5th Cir. 2006) (affirming summary judgment in favor of defendant on a retaliation claim when the plaintiff had complained about harassment generally but failed to specifically mention race or sex). Even if plaintiff found Warren's behavior rude or offensive, her complaints as alleged did not implicate Title VII. *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998) (explaining that "Title VII does not prohibit all verbal or physical harassment in the workplace" but is directed only at discrimination based on sex.) Thus, we find that the plaintiff's amended complaint failed to show that she engaged in a protected activity, one of the elements of a Title VII retaliation claim. Accordingly, we recommend the court grant the defendant's motion to dismiss for failure to state a claim as to her Title VII retaliation claim. Since we already granted plaintiff leave to amend once, we recommend the court now deny leave to amend. *Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (a court may deny leave to amend once a plaintiff has had a "fair opportunity to make his case"). No additional factual allegations could cure the legal deficiencies in this claim; thus, any further amendment would be futile. *Stripling v. Jordan Production Company, L.L.C.*, 234 F.3d 863, 872-73 (5th Cir. 2000) (holding that a court is within its discretion to deny leave to amend if the proposed amendment would be futile due to plaintiff's failure to state a claim under Rule 12(b)(6)).

### B. *ADEA Retaliation Claim*

Defendant argues that plaintiff failed to exhaust her administrative remedies as to her ADEA retaliation claim because her administrative charge did not reference any element of ADEA retaliation. Doc. 13, att. 1, pp. 14-16. Alternatively, the defendant argues the plaintiff failed to state a claim because she did not sufficiently allege opposition to unlawful age discrimination in her amended complaint. *Id.*, pp. 24-25.

### 1. Exhaustion of Administrative Remedies

In her administrative charge, the plaintiff stated, in pertinent part: "In October 2018, my mom interviewed for a position with the company, hired for one day, and then Mr. Warren stated that Mr. Kupers [sic], General Manager, did not want to permanently hire my mom because she was too old." Doc. 11, att. 1. The charge says that she sent a text to Warren "stating that I should have gone to Human Resources and reported him for the August 2018 incident." *Id*. She then states that she was suspended pending an investigation and ultimately fired in December 2018. *Id*. Additionally, the plaintiff checked the box marked "RETALIATION" on the form and concluded in her charge that "I believe I have been retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id*.

Defendant maintains that, because the plaintiff's LCHR charge fails to allege that she opposed an unlawful employment practice based on age, an ADEA retaliation claim would not reasonably grow from the charge. Doc. 13, att. 1, p. 14-15. In response, plaintiff argues that any reasonable EEOC investigation would have included production of the text message wherein she confronted Warren about not hiring her mother. Doc. 15, p. 12. Plaintiff contends that altogether, the following portions of her charge would give rise to ADEA retaliation: (1) the language stating that the General Manager refused to hire her mother because she was too old; (2) a reference to the subsequent text she sent to Warren; and (3) she checked the "retaliation" box on the charge. *Id*.

The relevant inquiry is whether an ADEA retaliation claim is "like or related to the charge's allegations" and whether such a claim would fall within the scope of the EEOC investigation reasonably expected to grow from the initial charge. *Fellows,* 701 F.2d at 451. Additionally, under applicable Fifth Circuit precedent, we will construe the scope of her charge liberally. *Pacheco*,

448 F.3d at 788. Moreover, it is not dispositive that plaintiff's charge concluded that she was only retaliated against in violation of Title VII, but not the ADEA. *See Vicknair,* 555 F. App'x at 332.

We find that plaintiff's initial charge would give rise to an EEOC investigation for ADEA retaliation. Though she did not expressly claim ADEA retaliation, the substance of plaintiff's charge implicates such a claim by referencing (1) refusal to hire based on age, (2) confrontation of her supervisor in a text message, and (3) subsequent discharge from the company.[6] Thus, an ADEA retaliation claim is at least "like or related to" the allegations set forth in plaintiff's charge because when interpreted broadly, the charge does give rise to such a claim.[7]

Additionally we find that, at the very least, the text message demonstrating that plaintiff confronted Warren about his failure to hire her mom would "reasonably grow" from the EEOC's investigation of this charge. An EEOC investigation would include production of the text message, which did indicate plaintiff's general opposition to Warren's refusal to hire her mother. Doc. 11, att. 3. ("Why can't you just be upfront and tell the truth you know u could have hired her if you wanted …"). Thus, an ADEA retaliation claim would be within the scope of the resulting investigation. As such, we find plaintiff exhausted her administrative remedies as to ADEA retaliation.

---

[6] Defendant points out that the charge stated the text message concerned complaints about the sexual harassment incident, but not age discrimination. Doc. 16 pp. 3-4. We find, however, that the general reference to the text message sufficiently indicated plaintiff's opposition.

[7] The defendant relies on a recent Western District of Louisiana case, *Darnell v. Golden Nugget Lake Charles LLC*, No. 19-890, 2020 WL 749669, at *3 (W.D. La. Feb. 13, 2020). In that case, the District Court granted the defendant's 12(b)(6) motion and dismissed plaintiff's ADEA retaliation claim for failure to exhaust her administrative remedies. *Id*. We find *Darnell* distinguishable, as the plaintiff's EEOC charge in that matter only mentioned discrimination under Title VII, the Americans with Disabilities Act ("ADA"), and Louisiana's general statute on unlawful discrimination (La. R.S. 23:301 *et seq*.), but failed to mention the ADEA or any age component of discrimination. Unlike the *Darnell* charge, here, the plaintiff's charge did mention the defendant's failure to hire her mother based on age.

**2. Failure to State a Claim Upon Which Relief Can Be Granted**

For her ADEA retaliation claim, plaintiff alleges that she "advised Defendant, through various management and supervisory officials, of what she perceived to be illegal discriminatory activity exhibited by Steve Kypers and/or Christopher Warren." Doc. 11, p. 11, ¶ 50. Specifically, she alleges that (1) her supervisor, Warren, informed her that Kypers would not allow him to hire the plaintiff's mother because "she is too old";[8] (2) plaintiff thereafter sent Warren the text message, stating in part: "Why can't you just be upfront and tell the truth you know u could have hired her if you wanted to";[9] (3) plaintiff showed the text to Kypers and "asked Kypers why he refused to hire her mother for being 'too old'";[10] (4) in her meeting with Sandoval, "noted her concern that her mother was denied employment because she was 'too old.'"[11] Plaintiff alleges that these events as a whole constituted "opposition" to an unlawful employment practice under the ADEA. Doc. 15, p. 21. She urges that voicing her concerns about the company's failure to hire her mother for being "too old" logically equates to complaining about age discrimination. *Id*. Defendant contends, on the other hand, that plaintiff's complaints to supervisors, as alleged, did not specifically reference unlawful discrimination and therefore do not constitute "opposition." Doc. 16, p. 8.

We find that plaintiff has sufficiently alleged facts to establish her opposition to defendant's practices. Substantively, the plaintiff does allege discrimination: that elderly age was the reason for the defendant's refusal to hire her mother. Moreover, the plaintiff raised her concerns about this discrimination and specifically referenced the age component in her complaints. Though her complaints were informal, these complaints would place her employer on notice that she

---

[8] *Id*., p. 5, ¶ 21.
[9] *Id*., ¶ 22.
[10] *Id*., p. 6, ¶ 23
[11] *Id*., p. 6, ¶ 24.

believed they were unlawfully discriminating against her mother for being "too old." Thus, we find that plaintiff sufficiently alleged that she engaged in a "protected activity" under the ADEA.

Additionally, plaintiff alleges that she was terminated, which establishes the "adverse employment" element of the retaliation claim. Doc. 11, p. 7, ¶ 29. She establishes the "causal link" element of the claim by alleging temporal proximity between the time she raised her concerns and her termination. *Id*., p. 11, ¶ 54. Also, she alleges facts indicating that the reason the employer gave for her termination was pretextual.[12] Thus, plaintiff has alleged facts establishing each element of the ADEA retaliation claim. We therefore we recommend the court deny the defendant's motion to dismiss that claim.

### III.
#### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motion to Dismiss be **GRANTED** in part and **DENIED** in part. **IT IS RECOMMENDED** the court **GRANT** defendant's motion to dismiss plaintiff's Title VII retaliation claim for failure to state a claim upon which relief can be granted. We further **RECOMMEND** the court **DENY** defendant's motion to dismiss plaintiff's ADEA retaliation claim.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and

---

[12] Plaintiff alleged that defendant treated her differently than other employees suspended from Delta Downs and, contrary to the company's usual practice, she was allowed to return to her office and collect her belongings following the suspension and termination. Doc. 11, p. 6-7, ¶ 26 and 30. Also contrary to the company's usual practice, no one escorted plaintiff from the building upon her termination, indicating that they did not view her as a "problem employee." *Id*., p. 7, ¶ 31. Additionally, Sandoval told plaintiff she was being terminated because "each and every employee" complained about her, but plaintiff alleges that no such complaints were ever made. *Id*., p. 7, ¶ 28 and 32.

Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1428–20 (5th Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1)), *as recognized in Cruz v. Rodriguez*, __ F. App'x __, 2020 WL 6478502 (5th Cir. 2020) (unpubl.)

    THUS DONE AND SIGNED in Chambers this 21st day of January, 2021.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE